**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| NOAH B. WILLIAMS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner of the Social Security )<br>Administration, )<br>)<br>Defendant. ) | Case No. CIV-04-1109-M |

**REPORT AND RECOMMENDATION**

Plaintiff, Noah B. Williams, seeks judicial review of the final decision by the Defendant Commissioner denying Mr. Williams' application for disability insurance benefits and supplemental security income benefits (SSI benefits). This matter has been referred for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). The Commissioner has answered and filed the administrative record ("AR"). Both parties have briefed their respective positions, and the matter is now at issue. For the reasons stated below it is recommended that the Commissioner's decision be reversed and remanded for further proceedings.

**I.   Procedural History**

Plaintiff filed an application for disability insurance benefits alleging an inability to work since June 30, 2001, based on diabetes, mental problems, high blood pressure, knee problems, nose bleeds, memory problems and fatigue. AR 73. Plaintiff's application was denied initially and on reconsideration. AR 34-35. Subsequently, a hearing was held before

an Administrative Law Judge (ALJ). After consideration of the evidence, the ALJ found that Plaintiff was not disabled. AR 16-26. The Appeals Council denied Plaintiff's request for review. AR 5-7. Therefore, the decision of the ALJ is the final decision of the Commissioner.

## II.     The ALJ's Disability Determination

The ALJ followed the sequential evaluation process required by 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920. He first determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 17, 25.[1] At step two, the ALJ determined that Plaintiff suffers from severe impairments including hypertension, diabetes mellitus, borderline intellectual functioning and depression. AR 18, 25.[2] At step three, the ALJ found no impairment or combination of impairments that meets or equals the criteria of any listed impairment described in the regulations. AR 18, 25. At step four, the ALJ determined Plaintiff's residual functional capacity (RFC):

> [T]he claimant has the residual functional capacity to lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; perform simple and repetitive tasks; relate appropriately to co-workers and supervisor; and relate to the general public superficially. The claimant has had right knee

---

[1] Plaintiff's earnings record indicates that he did work at various jobs in 2003. The ALJ determined that the work activity did not qualify as "substantial work activity" because of the sporadic nature and short duration of the jobs as well as the low amount of income derived from them. AR 17.

[2] The ALJ found Plaintiff's alleged osteoporosis of the back, ringing in his ears and blurred vision not to be medically determinable. The ALJ found that Plaintiff's nosebleeds, headaches and knee pain are not severe. AR 18.

2

>surgery in the past, which would reasonably be expected to cause pain with carrying heavy items. However, limiting the claimant to only medium exertion should not cause excessive pain. Also, claimant has performed medium work activity since his surgery and has not alleged these jobs ended because of problems with his knees. The claimant does have borderline intellectual functioning but is able to understand, remember and carry out simple repetitive tasks on a consistent basis.

AR 22. Based on this RFC, the ALJ determined that Plaintiff can perform substantially all of the requirements of medium work and that, therefore, Plaintiff can perform a significant range of medium work. AR 24, 26. Purportedly based on the testimony of the VE, the ALJ further found that Plaintiff could perform his past relevant work as reject butcher, prison guard, construction worker, fast food worker, rail mobile assembler and dishwasher.[3] AR 23, 25. Assuming, for the sake of judicial economy that Plaintiff was not able to return to his past relevant work, the ALJ completed the fifth step of the sequential evaluation process finding that Plaintiff could perform a significant number of jobs that exist in the national economy such as window cleaner, auto detailer, used car lot porter, folding/insert newspapers, garment assembly, clerk, and miscellaneous document preparer. Based on the testimony of the VE, the ALJ determined that these jobs exist in significant numbers in the

---

[3]In his hypothetical question to the VE, the ALJ included mental limitations but stated that the hypothetical individual would be able to "retain and carryout [sic] simple tasks with routine supervision." AR 276. After the VE identified the past jobs Plaintiff could, in her opinion, perform, Plaintiff's representative asked if the semi-skilled past jobs would need to be eliminated because of the mental limitation imposed by the ALJ in his hypothetical question. The VE agreed that "[s]emi-skilled work would be eliminated." AR 282. Because of the mental limitations, the VE testified that Plaintiff's past relevant work as prison guard and trailer assembler would either be eliminated completely, or at least the occupational base would be reduced by as much as 50 percent. AR 283.

regional and national economies. AR 24, 26. The ALJ's findings at step four and step five resulted in his decision that Plaintiff is not disabled. AR 21-22, 23.

### III. Plaintiff's Claim Raised on Appeal

Plaintiff raises two issue in this appeal. First, Plaintiff contends that the ALJ erred as a matter of law in failing to properly analyze the opinion of Dr. Ahn, one of Plaintiff's treating physicians. Plaintiff further contends that the ALJ's findings that Plaintiff's diabetes and hypertension are controlled by diet and medication are not supported by substantial evidence.

### IV. Standard of Review

Because the Appeals Council denied review, the ALJ's decision is the Commissioner's final decision for purposes of this appeal. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). "[S]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal* at 760 (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the specific rules of law that must be followed in weighing particular types of

evidence in disability cases, but does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

## V.  Analysis

### Treating Physician

On July 14, 2003, Plaintiff began treatment at Red Rock Behavioral Health Services. Dr. Ahn diagnosed Plaintiff with major depressive disorder, recurrent and severe, and he assessed Plaintiff's GAF at 21.[4]  AR 205, 218.  Plaintiff was an inpatient at Red Rock Behavioral Health Services until July 18, 2003. AR 200-205.  A mental status examination conducted upon admission revealed that Mr. Williams had marked problems, a slumped posture, facial expressions of anxiety and depression and feelings of depression. Additionally, Plaintiff exhibited marked impairment in his ability to manage daily living activities.  AR 210.  On July 18, 2003 Plaintiff agreed to outpatient services.  AR 199-200. He attended group therapy sessions through September 2, 2003.  AR 194-198.

On February 10, 2004, Dr. Ahn provided a Mental Medical Source Statement in which he assessed marked limitation in Plaintiff's ability to maintain attention and concentration for extended periods and in Plaintiff's ability to get along with co-workers or peers without

---

[4] Global Assessment of Functioning (GAF) is a 100-point tool rating overall psychological, social and occupational functioning of people 18 years of age and older.  A score of 21-30 on the GAF scale indicates that "behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) OR inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)."  Diagnostic and Statistical Manual of Mental Disorders, 4th ed. at 32.

distracting them or exhibiting behavioral extremes. He further found moderate limitations in Plaintiff's ability to understand and remember detailed instructions, his ability to carry out detailed instructions, his ability to work in coordination with or proximity to others without being distracted by them, his ability to make simple work-related decisions, his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, his ability to interact appropriately with the general public, his ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, and his ability to set realistic goals or make plans independently of others. AR 220-223. Dr. Ahn assessed Plaintiff's GAF, after treatment, at 50.[5]

Under the "treating physician rule," greater weight is generally given to the opinions of sources of information who have treated the claimant than of those who have not. *See Hackett*, 395 F.3d at 1173-1174 (*citing Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). First, the ALJ must determine whether the opinion of a treating source should be given controlling weight. *Id.* at 1174. Using a sequential analysis, an ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques;" and (2) "consistent with other substantial evidence in the record." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th

---

[5] A score of 41-50 on the GAF scale indicates "Serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social occupational, or school functioning (e.g. no friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders, 4th ed. at 32.

Cir. 2003) (quotation omitted).  If an opinion fails to satisfy either of these conditions, it "means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." *Id.* (quoting SSR 96-2p, 1996 WL 374188, at *4).  Non-controlling opinions "'are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927.'" *Id.*  Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  *Id.* at 1301 (quotation omitted).  If the ALJ chooses to reject the treating physician opinion entirely, the ALJ must set forth specific legitimate reasons for doing so.  *See Langley v. Barnhart*, 373 F.3d at 1119.  As explained in policy interpretations regarding treating source evidence:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

Soc. Sec. Rul. 96-5p, 1996 WL 374183 at *6-7.

In this case, the ALJ states only that he "does not accord controlling weight to the Mental Medical Source Statement by Dr. Ahn completed four months after the claimant was last seen at Red Rock Behavioral Health Services." AR 21. In support of this statement, the ALJ states that "this opinion is at variance with the treatment records, which [do] not note any limitation in attention or concentration." AR 21.[6] This finding supports only the ALJ's decision not to accord controlling weight to Dr. Ahn's Mental Medical Source Statement. But it is unclear just what weight, if any, the ALJ assigned to Dr. Ahn's opinion. Moreover, the ALJ did not analyze the six factors set forth in the regulations at 20 C.F.R. § 404.1527 and 416.927. If the ALJ completely rejected Dr. Ahn's Mental Medical Source Statement, he erred in failing to give specific legitimate reasons for doing so. This error is reversible. It is therefore recommended that this case be reversed and remanded so that the ALJ may properly analyze Dr. Ahn's Mental Medical Source Statement or further develop the record.

---

[6]The treatment records referenced by the ALJ are the notes made by therapists after group therapy sessions. The ALJ quoted one note stating that Plaintiff had "practiced independent living skills by washing dishes after lunch" and that Plaintiff had "no problems completing the tasks promptly and with a minimum of supervision." AR 20. Another note quoted by the ALJ stated that Plaintiff had "attended a County Fair and interaction with the community was noted to be acceptable." *Id.* These examples of Plaintiff's abilities to perform a simple task and to interact appropriately with the public in a recreational setting do not necessarily conflict with Dr. Ahn's statements that Plaintiff has marked limitations in his ability to maintain attention and concentration for extended periods and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. Washing the lunch dishes one time does not refute Dr. Ahn's conclusion that Plaintiff has marked limitations in his ability to maintain attention and concentration for extended periods, nor does exhibiting appropriate behavior for a day at a county fair refute Dr. Ahn's conclusion that Plaintiff has marked limitations in his ability to get along with co-workers or peers without distracting them or exhibiting behavior extremes. At the very least, the ALJ should have recontacted Dr. Ahn and requested more information or sought additional information from another medical source.

**Substantial Evidence: Physical Findings**

Plaintiff contends that the ALJ's findings that Plaintiff's high blood sugar and high blood pressure are controlled by medication and diet are not supported by substantial evidence in the record as a whole. These findings are significant, Plaintiff contends, because these conditions are causing a variety of symptoms and, therefore, have a significant impact on Plaintiff's ability to perform work activity on a sustained basis. Plaintiff's Opening Brief at 21-23.

The ALJ noted that Plaintiff's random blood sugar was recorded at 289 mg/dl on July 11, 2001, and Plaintiff's fasting blood sugar was recorded at 279 mg/dl on August 16, 2001.[7] The ALJ then stated that by August 27, 2001, his fasting blood sugar was 121 mg/dl due to diet and medication. AR 19. Plaintiff's blood sugar, however, was elevated to 344 mg/dl as of December 25, 2002, AR182, and it remained elevated thereafter. AR 150, 152, 178, 202.

Plaintiff's hypertension has also been consistently high.[8] In August 2002, Plaintiff's blood pressure registered 172/98. AR 123. Plaintiff's blood pressure was also elevated in December 2002, when it registered 160/100, AR 179; in July 2003, when it registered

---

[7] A normal glucose reading is 70-140 mg/dl for the entire day. Normal fasting blood sugar readings are 100 or less. *See Diabetes Action Research and Education Foundation*, at http://www.daref.org/z2062.html.

[8] A normal blood pressure reading for adults is 120/80 or less. *See Lifeclinic*, http://www.lifeclinic.com/focus/blood/whatisit.asp

9

146/114, AR 207; in September 2003, when it registered 174/96, AR 192; and in November 2003, when the systolic (top number) measurement was 200. AR 175.[9]

The Commissioner cites SSR 82-59 (1982) for the proposition that "[i]mpairments which may be controlled by treatment are not disabling." The purpose of this regulation, however, is "[t]o state the policy and describe the criteria necessary for a finding of failure to follow prescribed treatment when evaluating disability under Titles II and XVI of the Social Security Act and implementing regulations." The two cases cited by the Commissioner likewise involve claimants whose impairments are controlled by medication when they follow a medical regime. In this case, the record is devoid of evidence that Plaintiff has failed to follow a prescribed medical regime. In fact, the record indicates that Plaintiff has been prescribed numerous medications for his hypertension, which apparently had little effect, and that he became insulin-dependent despite the fact that he lost almost thirty pounds between June 1997 and July 2003. AR 206-208. Diabetes and severe hypertension sometimes cause symptoms exhibited by Plaintiff including blurred vision and headaches.[10] The ALJ found that Plaintiff's complaint of blurred vision was not medically determinable and that his headaches were not severe. AR 18. Therefore, the ALJ's finding that Plaintiff's diabetes and hypertension are controlled by medication is not supported by

---

[9]The diastolic pressure (bottom number) is illegible, but it appears that the number was 130 or above.

[10]Neither of these conditions, however, are linked to nosebleeds. *See The Merck Manual of Medical Information*, Second Home Edition online: http://www.merck.com/mmhe/sec13/ch 165a.html and http://www.merck.com/mmhe/sec03/ch22a.html#sec03-ch022-ch022a-184.

substantial evidence in the record. Given Plaintiff's symptoms of headache and blurred vision, this error is not harmless.[11] Accordingly, it is recommended that the Commissioner's decision be reversed and remanded for further proceedings.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any such objections must be filed with the Clerk of the District Court by November  21st , 2005. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

---

[11] A finding of harmless error is appropriate only in exceptional cases "where, based on material the ALJ did at least consider (just not properly), [the court] could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

ENTERED this  31st  day of October, 2005.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE